```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SHUBHADA INDUSTRIES, et al. | : | NO. 17-4324 |
| | : | |

<u>MEMORANDUM</u>

Bartle, J.                                            June 7, 2018

       The United States of America has sued two individual defendants Babu Metgud a/k/a Bob Metgud and Shubhada Kalyani a/k/a Shubhada Sue Kalyani Metgud for violations of the False Claims Act, 31 U.S.C. §§ 3729, et seq. There are also certain common law claims.[1] Metgud and Kalyani are representing themselves.

       The Government has moved for summary judgment on Count I of the amended complaint against these defendants for presentation of a false claim in violation of § 3729(a)(1)(A) of the False Claims Act.[2] <u>See</u> Fed. R. Civ. P. 56.

---

1. The Government has also sued several non-individual defendants with which the individual defendants are associated: Shubhada Industries, Metcon Aerospace & Defense d/b/a Metcon Industries, NRI Capital Corporation, and the Innovation Technology & Enterprise Development Center, Inc. The non-individual defendants are not represented. On March 5, 2018 we entered default judgment against the non-individual defendants in the amount of $227,026.

2. In total, the amended complaint contains seven claims. Counts I and II are brought against all defendants. Count I alleges presentation of a false claim in violation of 31 U.S.C. § 3729(a)(1)(A) and Count II avers retention of overpayment in violation of 31 U.S.C. § 3729(a)(1)(G). Count III, which names all defendants except for Metcon Aerospace, alleges making or

I

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[3] A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record

---

using a false record or statement in violation of 31 U.S.C. § 3729(a)(1)(B). Count IV against all defendants raises conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C). Counts V and VI, brought against all defendants, allege common law fraud and payment by mistake of fact, respectively. Finally Count VII against all defendants except for Metcon Aerospace raises unjust enrichment.

3. Rule 56(c)(1) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

evidence for a reasonable factfinder to find for the nonmovant. Id. at 252.

When ruling on a motion for summary judgment, we may only rely on admissible evidence. See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999). A party asserting that a particular fact "cannot be or is genuinely disputed" must support its assertion by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In reviewing a motion for summary judgment, the court may consider any materials in the record but is not required to look beyond those materials cited by the parties. Fed. R. Civ. P. 56(c)(3).

On a motion for summary judgment, a pro se party is not relieved from his or her obligations under Rule 56(e) of the Federal Rules properly to support or address a fact. See Dawson v. Cook, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citing Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)).

II

The following facts are undisputed. Babu Metgud formed Metcon Aerospace in or about 1978 or 1979 after he was graduated from college. Metgud and Shubhada Kalanyi, husband and wife, formed Shubhada Industries, a New Jersey corporation,

in 1992.  Shubhada Industries provides engineering services,
project management services, and parts to the United States
military from its location in Mount Laurel, New Jersey.  Metcon
Aerospace is the predecessor company of Shubhada Industries.[4]

Metgud and Kalyani are the only two officers of
Shubhada Industries.  Metgud provides "engineering and technical
work," while Kalyani, the president of the company, is a
"jack of all trades" and does "general and administrative work."
Metgud has a master's degree in mechanical engineering from
Worcester Polytechnic Institute.  Kalyani obtained an LLB degree
in law in India.

The United States Defense Logistics Agency Troop
Support ("the Logistics Agency") awards and administers
contracts on behalf of various departments of the Department of
Defense.  On December 3, 2014, the Logistics Agency in
Philadelphia issued a Request for Quotations to obtain two light
assemblies for munitions trailers.  The light assemblies are
"heavy duty turn signals."

---

4.  In their amended answer, Metgud and Kalyani admit that
NRI Capital Corporation is a "venture capital company[,] [a]nd a
project finance provider[.]"  They admit that Metgud is an
officer of the company.  In addition, the amended answer admits
that the Innovation Technology & Enterprise Development Center,
Inc. is a "virtual company" and Metgud is an officer of it.  The
amended answer concedes that these two companies share the same
address as Shubhada Industries and Metcon Aerospace.

The Request for Quotations required the bidder to submit a quote using the Logistics Agency Internet Bid Board System. The Request specifically required the bidder to state in its quote whether it was a dealer or manufacturer of light assemblies. In addition, the Request contained a clause that directed dealers to retain information that traced the product to its manufacturing source. The bidder was also instructed to submit with the quote its Contractor and Government Entity Code ("CAGE Code"), signifying its status as a manufacturer or dealer. These instructions further provided that the submission of a quote "constitute[d] the offeror's compliance with the representations" contained in the quote. The Request stated that the Logistic Agency's "offer to purchase, as evidence by an order" would be "made on the basis of a submitted quotation."

On December 16, 2014, Shubhada Industries submitted a quote for $73,842 to the Logistics Agency to furnish two light assemblies.[5] The quote identified Shubhada Industries as the vendor. It expressly provided that Shubhada Industries was a "manufacturer" rather than a "dealer" and contained a CAGE Code that signified it was a manufacturer rather than a dealer. In their amended answer, Metgud and Kalyani admitted that the quote was a "bid on the higher side" since they believed that the

---

5. We note that a company cannot submit a quote on its own. Metgud and Kalyani do not dispute that they are the only two employees of Shubhada Industries.

-5-

Logistics Agency's Request for Quotations was lacking in specification and instruction. The quote described the company as a woman-owned business and a minority-owned business.

In addition to describing itself in the quote as a manufacturer, Shubhada Industries also identified itself as a "manufacturer of goods" in the System for Award Management database in which the Government requires contractors to register in order to do business with it. In its annual database certification valid from November 6, 2014 to November 6, 2015, Metgud certified for Shubhada Industries that for commercial items, the "place of manufacture" means "the place where an end product is assembled out of components, or otherwise processed from raw materials into the finished product that is to be provided to the Government."

The Logistics Agency accepted the Shubhada Industries quote by placing an order with it on May 11, 2015. The purchase order provided that when the purchase order "identifies supplies by manufacturer's name, Commercial and Government Entity (CAGE) code, and part number . . . the specified item(s) are the only item(s) acceptable under this contract. The contractor may not substitute a different item after award." As with the Request for Quotations, the purchase order contained certain requirements that applied only to manufacturers and certain requirements that applied only to dealers. Notably, it mandated

that a dealer offering the product of a manufacturer must provide documentation that traces the supplies back to the original equipment manufacturer, or its authorized distributor. In contrast, a manufacturer was not required to provide this documentation. Here, as previously noted, the purchase order identified the name of Shubhada Industries, its CAGE Code as a manufacturer, and explicitly designated Shubhada Industries as a manufacturer.

On May 14, 2015, Metgud, through his company Metcon Aerospace, contacted DelVal Corporation to discuss the purchase and assembly of light assemblies.[6] DelVal responded to Metgud that it had experience assembling light assemblies. It offered to provide a small quantity of the item on "an experimental basis" and continue to assemble more if Metgud promised to purchase a larger quantity in the future. Metgud agreed that he would do so if the samples provided by DelVal were satisfactory.

For the next few weeks, Metgud followed up with DelVal to investigate whether it had "real capabilities to manufacture" the light assemblies so that they would pass inspection by the Logistics Agency. He emailed DelVal on multiple occasions. He confirmed that DelVal had a copy of the light assembly drawings

---

6. In the emails between Metgud and DelVal's representative, Metgud's signature identifies "Metcon Aerospace & Defense." On the corresponding purchase order for the light assemblies, the seller is DelVal and purchaser is "Metcon Industries," rather than "Metcon Aerospace."

that were in the Logistics Agency purchase order. According to the amended answer, it is normal to do so since the Logistics Agency "require [sic] us prime contractors to make sure all the sub-contractors and suppliers have the government drawings[.]"

On June 1, 2015, Metgud on behalf of Metcon Aerospace, ordered fifteen light assemblies from DelVal for $675.81 each. He did not inform the Logistics Agency of the purchase. The corresponding purchase order signed by Metgud between Metcon Aerospace and DelVal contains the same drawing number that is specified in purchase order between Shubhada Industries and the Logistics Agency. Before DelVal shipped the light assemblies, it tested them and certified that they were in conformance with the requirements listed on the Logistics Agency purchase order.

Shubhada Industries received the light assemblies from DelVal on July 21, 2015. Thereafter Metgud and Kalyani attached labels to the products and inspected them. That same day they sent the light assemblies to Roddy Products for packaging and shipping to a United States naval base in North Carolina. The identification tag on the package read "Shubhada Industries."

Roddy Products shipped the light assemblies to the North Carolina naval base and Metgud and Kalyani entered the relevant claim information into the Government's electronic system for processing vendor payments the Work Area Workflow

system ("WAWF"). The products were received on July 31, 2015 and thereafter the WAWF generated an electronic invoice.

A few weeks later on August 17, 2015 a naval engineer contacted Metgud to question the pricing of the light assemblies because he believed they were too expensive. Metgud explained that they were custom made. He did not mention DelVal.

Kalyani contacted the Logistics Agency on September 2 and September 3, 2015, respectively, requesting payment for the invoice. In an email she stated that "[b]eing a very small business, we have to pay our subs and suppliers." On September 21, 2015 the Logistics Agency submitted payment to Shubhada Industries for $73,963.79. This reflected the purchase order price of $73,842 plus an additional $121.79 in interest.

On October 15, 2015, a supervisor with the Logistics Agency, emailed Metgud and inquired "[a]re you able to advise what makes this light so expense? Is it very labor intensive or made of an expensive material?" He asked Metgud to identify the price for each of the light assembly component parts. Metgud responded five days later. In his six-page response, he explained, among other things, that the development and engineering costs were high in order to achieve the technical objectives of the project and that the costs "sometimes may seem very high, [sic] to untrained eyes." He stated that "Shubhada got its engineers to work overtime and accomplished the task of

engineering development." However, his response did not identify the price for each of the light assembly component parts. Also it did not identify that DelVal had been involved in the manufacturing or assembly of the light assemblies. Finally, it did not identify the unit price from DelVal of $675.81 per assembly.

The Government deposed Metgud and Kalyani individually on October 18, 2016. Invoking the Fifth Amendment of the United States Constitution, they declined to answer questions about Shubhada Industries and the manufacturing of the light assemblies.

III

The False Claims Act, enacted in 1863, "was originally aimed principally at stopping the massive frauds perpetrated by large contractors during the Civil War." United States v. Bornstein, 423 U.S. 303, 309 (1976). "Since then, Congress has repeatedly amended the Act, but its focus remains on those who present or directly induce the submission of false or fraudulent claims." Univ. Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 1996 (2016) (citing 31 U.S.C. § 3729(a)). The statute currently provides, in relevant part:

> [A]ny person who —
>
> > (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; . . .

>       is liable to the United States Government
>       for a civil penalty of not less than $5,000
>       and not more than $10,000, as adjusted by
>       the Federal Civil Penalties Inflation
>       Adjustment Act of 1990 . . . plus 3 times
>       the amount of damages which the Government
>       sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A). "The primary purpose of the [False Claims Act] is to indemnify the government – through its restitutionary penalty provisions – against losses caused by a defendant's fraud." United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 304 (3d Cir. 2011) (quoting Mikes v. Straus, 274 F.3d 687, 696 (2d Cir. 2001)) (internal quotation marks omitted). Violations that occurred between September 28, 1999 and November 2, 2015 carry a statutory civil penalty between $5,500 and $11,000 plus three times the amount of the Government's damages. 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.3; 64 Fed. Reg. 47099, *47103–04 (1999).

A violation of the False Claims Act "includes four elements: falsity, causation, knowledge, and materiality." United States ex rel. Petratos v. Genentech Inc., 855 F.3d 481, 487 (3d Cir. 2017). There are two categories of false claims under the False Claims Act: a factually false claim and a legally false claim. Wilkins, 659 F.3d at 305. A claim is "factually false when the claimant misrepresents what goods or services that it provided to the Government[.]" Id. In

-11-

contrast, a claim is "legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation that the compliance with which is a condition for Government payment." Id. Even "half-truths — representations that state the truth only so far as it goes, while omitting critical qualifying information — can be actionable misrepresentations." Escobar, 136 S. Ct. at 2000.

Under the second element of a False Claims Act claim, causation, the Government must prove that "the defendant presented or caused to be presented to an agent of the United States a claim for payment[.]" Wilkins, 659 F.3d at 305. The third element of a claim under the Act, knowledge, requires that the defendant "has actual knowledge of the information; . . . acts in deliberate ignorance of the truth or falsity of the information; or . . . acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). Proof of intent to defraud is not required. Id. The final element, materiality, is "demanding," "rigorous," and goes "to the very essence of the bargain." Escobar, 136 S. Ct. at 2003, 2004 at n. 6, 2003 at n. 5. Materiality is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

IV

In their amended answer and responsive brief, Metgud and Kalyani do not dispute the material facts that we have set forth above. Instead they suggest that the claim for payment was not false since the light assemblies were manufactured pursuant to a teaming agreement between Shubhada Industries and DelVal.

A teaming agreement is "an arrangement whereby a subcontractor will 'team' with a company intending to bid on a government contract as a prime contractor in order to pool financial and technical resources." Atacs Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998). Teaming agreements may be attractive to both the Government and contractors since they allow companies to "complement each other's unique capabilities[,]" as well as "offer the Government the best combination of performance, cost, and delivery for the system or product being acquired." 48 C.F.R. § 9.602(a). Notably, teaming agreements are valid only if contractors identify and disclose teaming agreements to the Government. 49 C.F.R. § 9.603. This must be done by the contractor in the course of an offer or, if an offer is already submitted, before the teaming agreement becomes effective. Id.

The Government has established without any genuine dispute at least the legal falsity of the False Claims Act claim

under § 3729(a)(1)(A). Shubhada Industries was not the manufacturer of the light assemblies as Metgud agreed on its behalf that it would be, and there was no disclosed teaming agreement between Shubhada Industries and DelVal. Metgud and Kalyani have produced no evidence to the contrary.

Metgud and Kalyani next contend in their amended answer and responsive brief that the repeal of the Walsh-Healey Public Contracts Act of 1936, 41 U.S.C. §§ 35, et seq., eliminated Shubhada Industries' contractual responsibility to manufacture the light assemblies. The Walsh-Healey Act was intended to "prevent the use of public funds to depress working conditions, and instead 'to use the leverage of the Government's immense purchasing power to raise labor standards.'" United States v. New England Coal & Coke Co., 318 F.2d 138, 143 (1st Cir. 1963) (quoting Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 507 (1943)). The Act aimed to raise labor standards by limiting the Government's ability to award certain contracts to "established manufacturers and regular dealers." Id. The 1994 repeal of certain provisions of the Act "eliminate[d] the requirement that covered contractors must be either a 'regular dealer' or 'manufacturer.'" See Federal Acquisition Streamlining Act of 1994, Pub. L. 103-355, 108 Stat. 3243; see also 60 Fed. Reg. 46553-01, 46554 (Sept. 7, 1995).

The Walsh-Healey Act and the 1994 repeal have no bearing on the liability of Metgud and Kalyani. The requirement that Shubhada Industries supply the light assemblies as the manufacturer was contractual, not statutory. The quote for $73,942 submitted by Shubhada Industries on December 16, 2014 expressly provided that it was a "manufacturer" rather than a "dealer." The Logistics Agency accepted the offer upon entering into the purchase order with Shubhada Industries. The purchase order, which created a contractual obligation upon the parties, set forth the specific contractual obligations of manufacturers and dealers. Thus the argument of Metgud and Kalyani is unavailing.

Metgud and Kalyani do not dispute the material facts that go to the causation, knowledge, or materiality elements of the claim in Count I of the amended complaint. They are as follows.

Metgud and Kalyani instructed Roddy Products to ship the light assemblies to the North Carolina naval base. They admit in their responsive brief that they entered into the WAWF the information needed to generate an invoice. Thereafter the WAWF generated an automated invoice on July 31, 2015. These undisputed facts show that Metgud and Kalyani "caused to be presented to an agent of the United States a claim for payment[.]" Wilkins, 659 F.3d at 305.

Next, the record is uncontested that Metgud and Kalyani, the only two employees of Shubhada Industries and Metcon, had knowledge of the purchase agreement between Shubhada Industries and the Logistics Agency, and knowledge that DelVal rather than Shubhada Industries manufactured the light assemblies. Additionally, Metgud and Kalyani knew of the assembly price charged to Shubhada Industries by DelVal, as well as the assembly price Shubhada Industries charged to the Logistics Agency. There is no dispute that Metgud and Kalyani sought payment in full for the light assemblies at the purchase price marked up 5,400% from the unit price DelVal had charged Shubhada Industries.

Finally, the record is unchallenged that the information provided by Metgud and Kalyani was material to the payment of money by the Logistics Agency to Shubhada Industries. 31 U.S.C. § 3729(b)(4). The Logistics Agency's Request for Quotations stated that the "offer to purchase, as evidence by an order" would be "made on the basis of a submitted quotation."

Significantly, during their depositions in October 2016, Metgud and Kalyani each invoked the right against self-incrimination under the Fifth Amendment to the Constitution. In civil cases, "reliance on the Fifth Amendment . . . may give rise to an adverse inference against the party claiming its benefits." SEC v. Graystone Nash, Inc., 25

-16-

F.3d 187, 190 (3d Cir. 1994). We draw adverse inferences here against both defendants in connection with the Government's claim under the False Claims Act.

Any remaining arguments put forth by Metgud and Kalyani in their amended answer or responsive brief are without merit. The record is straightforward, and there is no genuine dispute as to any material fact relevant to Count I of the amended complaint. The Government is entitled to summary judgment in its favor.

V

As we have previously discussed, a person who is liable for a violation of 31 U.S.C. § 3729(a)(1)(A) that occurred between September 28, 1999 and November 2, 2015 is subject to a civil penalty between $5,500 and $11,000 plus three times the amount of the Government's damages. 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.3; 64 Fed. Reg. 47099, *47103–04 (1999).

The Government's undisputed damages in this case are $73,963.79. This sum represents the purchase order price of $73,842 plus an additional $121.79 in interest. Tripling this amount increases the damages to $221,891.37.

The facts in the record support a civil penalty at the top of the statutory range of $5,500 to $11,000. First, the Government paid to Shubhada Industries $73,842 for two light

-17-

assemblies, not including interest, or $36,921 each.  Shubhada Industries bought fifteen light assemblies from DelVal at a price of $675.81 each.  This is an astronomical markup by Shubhada Industries of more than 5,400%.

Metgud and Kalyani are educated, experienced individuals.  Metgud has a master's degree in mechanical engineering while Kalyani obtained an LLB degree in law.  Metgud has been involved in this business since 1979, and the pair has been operating Shubhada Industries as its sole officers since 1992.  It is clear from the record that Metgud and Kalyani hold themselves out to have vast experience in contracting with the Government, as well as specific technical knowledge.  They are not novices in their trade.

Metgud and Kalyani have not been forthright or cooperative in the Government's investigation of the claims alleged in the amended complaint.  They shrug off the Government's investigation and this proceeding.  In their amended answer, they state that "We can negotiate a refund over a cup of coffee instead of a court room [sic], wasting everybody's time.  Shubhada will buy the coffee!"  In addition, the evidence demonstrates that on at least two occasions prior to this action the pair was contacted by a Government representative who was inquiring about the basis for the price of the light assemblies.  Metgud and Kalyani never disclosed the

purchase of the light assemblies from DelVal.  Metgud did not provide forthright answers to the Logistics Agency supervisor who asked for an explanation about the price of the materials and the labor efforts.  Metgud falsely represented that the engineers at Shubhada Industries worked overtime to furnish the light assemblies, while he was the company's only engineer.

In light of these uncontested facts, we find that the statutory civil penalty of $11,000 for the false claim submitted to the Logistics Agency is appropriate.  Accordingly, defendants Metgud and Kalyani are jointly and severally liable to the Government for the sum of $232,891.37.